## CHRISTIAN SOCIETY IN PLYMOUTH *vs.* ELIJAH MACOMBER & another.

Where persons, in the year 1824, formed themselves into an association for religious purposes, without any lay organization under *St.* 1823, *c.* 106, or otherwise, but solely under the advice and direction of the ministers and elders of their denomination, and entered into an agreement, which they afterwards fulfilled, to support and maintain public worship, it was *held,* that they constituted a religious society under *St.* 1811, *c.* 6, and became competent, as such, to take grants or donations, and to prosecute an action of trespass to maintain and defend the possession of real estate granted or leased to them for their use as a religious society. *Held* also, that the members of such society were competent witnesses for the plaintiffs in such action, within the intent of the Rev. Sts. *c.* 94, § 54.

THIS was an action of trespass *quare clausum fregit*, in which the plaintiffs complained that the defendants broke their close, entered their meetinghouse, took possession thereof, and excluded the plaintiffs therefrom for a long time, viz., from the 1st of April 1839, to the time of the commencement of the action on the 24th of March 1840. The defendants pleaded the general issue, and gave notice that they should deny the capacity of the plaintiffs, as a corporation or aggregate body, to bring this action, and should also deny the plaintiffs' seizin and possession of the *locus in quo ;* that they should prove soil and freehold in Elijah Macomber, one of the defendants, and that the other defendant entered by license from him.

The chief justice, who tried the case, ruled that under this

plea and notice, the plaintiffs were bound to prove their right and capacity to sue as a corporation. [See 3 Met. 235. 417.]

No evidence was offered that the plaintiffs had been incorporated by an act of the legislature, or that they had organized themselves conformably to the provisions of *St.* 1823, *c.* 106, or that they had applied to a justice of the peace for a warrant to call a meeting, or that they had otherwise complied with the provisions of that statute. But they contended that they were a legally constituted unincorporated religious society, and, as such, had power, under *St.* 1811, *c.* 6, § 3, to take grants and donations, in their aggregate capacity, and in the same capacity to maintain an action of trespass to secure and defend their right of possession of an estate granted to them.

Several witnesses were called by the plaintiffs, who were members of said society, and were objected to by the defendants, as incompetent by reason of interest ; but the objection was overruled, and they were permitted to testify. Evidence was then offered by the plaintiffs to show the formation of a church and society, conformably to the rules and usages of the denomination called Christians ; that for this purpose several elders and preachers of that denomination, from other places, by invitation of this society, attended them, and that they met together in the year 1824 ; that the names of the persons associating were entered in a book, kept by one of the members, as scribe ; that they entered into an agreement to go on and maintain public worship, observe religious ordinances, and watch over each other ; that they were called upon to take each other by the hand, in token of christian fellowship ; that they received the right hand of fellowship from the ministers present ; and that prayers and addresses were made by the ministers on that occasion. The evidence further tended to show that they had no other organization ; that since 1824 they have had annual and other meetings for business ; had maintained public worship, with more or less constancy ; had usually chosen some one of their number to be clerk and keep a record or memorandum of their votes ; but that such clerk had never been sworn.

The defendants contended that though the evidence might

prove the constitution of a church or ecclesiastical body, it had no tendency to prove the constitution of a religious society with power to take grants, and bring actions, as an unincorporated religious society, within the aforesaid *St.* of 1811, and that a deed to such church would give no title to them as a society.

But the jury were instructed, that if the plaintiffs met to gether, under the advice and direction of ministers and elders of the Christian denomination, and formed themselves into an asso ciation for religious purposes, and agreed, among other things, to support and maintain public worship — though without any lay organization, by an application to a justice of the peace or other wise, they constituted a religious society under *St.* 1811, *c.* 6, and became competent, as a body, to take a deed or lease of real estate : That such a deed or lease would constitute a grant or donation, and give them a right and power, under that statute, to prosecute an action of trespass *quare clausum fregit* to main tain and defend their possession of estate thus leased or granted for their use as such religious society. To this instruction the defendants excepted.

The plaintiffs relied on a deed, and also upon a lease for years or at will, alleged to have been made by Elijah Macomber, one of the defendants, to the society, by the name under which they associated The question of the execution of such deed or lease was left to the jury under instructions not excepted to.

A verdict was returned for the plaintiffs.

New trial to be granted, if the instruction excepted to was wrong, or if the members of said society ought not to have been admitted as witnesses for the plaintiffs.

*Eddy*, for the defendants.

*W. Thomas & Coffin*, for the plaintiffs.

HUBBARD, J. Two questions are presented for the consid eration of the court in this case. The one, whether the plain tiffs constituted a religious society capable of receiving and hold ing, as such, a grant or donation of real estate ; the other, whether the witnesses, who are members of the society, were legally competent to testify on behalf of the plaintiffs.

In respect to the first question, it is urged upon the consider-

ation of the court that this was merely an ecclesiastical organization of the plaintiffs as members of a church, and not a legally organized religious society created by force of any statute of the Commonwealth, and as such capable of taking and holding real estate. But while such a distinction is advanced, the difference between an ecclesiastical and a lay organization of an *unincorporated* religious society is not pointed out. Where a society is incorporated by any of the express modes provided in the statutes, a lay organization is well ascertained, and the manner of proceeding prescribed ; while the ecclesiastical regulations are left to be settled by the forms and usages of each denomination, about which the statutes neither direct nor interfere. But in the case of an unincorporated society, whose civil existence is acknowledged for certain important purposes, nothing else is required but an adherence to its own forms and usages, whatever they may be, if not contrary to the constitution and laws of the Commonwealth. And whether a difference is made, or not, among themselves, in those forms and usages which involve the distinction of lay and ecclesiastical, is of no importance when they seek, as an unincorporated society, to pursue or protect their civil rights. And the court will not be astute to establish distinctions which they believe the legislature did not intend to make.

It is not contended by the plaintiffs, that they associated under an act of incorporation, or were regularly organized by pursuing the requisitions of *St.* 1823, *c.* 106 ; but that they are a religious society, within the provisions of *St.* 1811, *c.* 6, sometimes called the religious freedom act. It having been expressly decided in *Oakes* v. *Hill*, 10 Pick. 333, that the *St.* of 1811 was not repealed by the *St.* of 1823, (which decision was confirmed by the case of *Fisher* v. *Whitman*, 13 Pick. 350,) it is only necessary to examine whether the plaintiffs bring themselves within the provisions of that statute, to enable them to take and hold real estate as an unincorporated religious society. That statute was intended to place societies of every denomination of christians equally under the same protection of the law, whether corporate or unincorporate ; and it provided, in substance, that

every association of citizens for the support of public worship, united together according to the forms and usages of their own religious sect or denomination, should not only be entitled to appropriate the moneys assessed upon and paid by them for the support of their own teacher, but it further provided, that in case any donation, gift or grant should thereafter be made to any unincorporate religious society, such society should have full power to manage, improve and use the same, according to the terms and conditions on which the same might be made, to elect suitable trustees, agents or officers therefor, and to prosecute and sue for any right which might vest in such society in consequence of such donation, gift or grant.

It appears by the evidence, as reported in this case, that the plaintiffs contend that in the year 1824, a church and religious society was formed conformably to the rules and usages of the denomination called Christians ; and they produced witnesses to prove that for this object they, and their former associates, invited the elders and preachers of their denomination, from other places, to meet them for the purpose of organizing their society; that a meeting was accordingly held, the names of the persons associating were entered in a book kept by one of the number as a scribe ; that they entered into an agreement with each other to maintain public worship, to observe religious ordinances, and to watch over each other ; that they were received into the fellowship of the churches of that denomination, and have since that time maintained public worship with more or less constancy ; have held annual and other meetings for the transaction of their business, and have usually chosen one of their number to be clerk and to keep a record or memorandum of their votes, though such clerk has never been sworn.

It is true that the society never organized under the statute of 1823, nor since that time under the provisions of the revised statutes ; but we cannot doubt, that being a society organized and established according to the forms and usages of their own sect and denomination, they became not merely a church or ecclesiastical body, but an unincorporated religious society, within the intent and meaning of *St.* 1811, *c.* 6, and, as such, were

made capable of taking and holding, either by deed or demise, the real estate, for a trespass on which the present action is brought.    Without such a construction, the plaintiffs, though a religious society associated for public religious worship, and reg- ularly maintaining the same, are deprived of the very advantages intended to be bestowed upon unincorporated religious societies by the statute of 1811 ; which act was not repealed by any sub- sequent legislation on the same subject, prior to the revision of the statutes.    Nor do the revised statutes themselves deprive the plaintiffs of any rights, or take away any remedies, which they could have previously exercised ; for by Rev. Sts. *c.* 20, § 25, it is provided that " in case any donation, gift or grant, shall be made to any unincorporated religious society, such society shall have the like power to manage, use and employ the same, accord- ing to the terms and conditions on which the same may be made, as incorporated societies now have, or may hereafter have by law ; to elect suitable trustees, agents or officers therefor ; and to prosecute and sue for any right, which may vest in them, in consequence of such donation, gift or grant ; *and such society shall be a corporation,* so far as may be necessary for the purpo- ses expressed in this section."    And while the three subsequent sections provide an easy method for any religious society, not incorporated, to organize themselves into a corporation, it does not compel such organization in order to enable an unincorpo- rated society to avail itself of the privilege of any donation, gift or grant ; but on the other hand, the 25th section is a reënact- ment of the 3d section of the law of 1811, with the additional provision, that for the purpose therein named, every such society is declared to be a corporation ; the object of which clause seems expressly to be to remove the objection of their being a mere collection of individuals without any legal organization.

We are therefore of opinion that the plaintiffs are an unincor- porated religious society, within the intent and meaning of the act of 1811, and, as such, capable of taking and holding any gift, grant or donation of real estate, and consequently of prosecuting actions for the maintenance of the rights growing out of the same.

We are now brought to the consideration of the second question, viz., whether the persons who were members of the society, and permitted to testify in the cause, were competent witnesses ; and we think this question is dependent upon the first. It was indeed said by the learned counsel, in arguing this point, that the incompetency of witnesses, in cases analogous to the present, has been twice ruled at nisi prius ; but we are not favored with the names of the cases, nor the circumstances connected with the rulings. We must therefore decide this point independently of the rulings referred to, whatever they may have been ; and being of opinion that the plaintiffs, called the First Christian Society in Plymouth, are an unincorporate religious society embraced within the provisions of the act of 1811, we think they are also entitled to the privileges of the 54th section of the 94th chapter of the ' revised statutes, which provides, among other things, that in all cases in which a legally organized religious society " shall be, in their corporate capacity, parties to, or interested in, any suit, any member of such corporation may be admitted as a competent witness to testify, provided there be no sufficient objection to his competency, except that of his being such member of the corporation." Now in this case, the plaintiffs, being associated together under their own forms and usages, for public religious worship and maintaining the same, are in our opinion, by virtue thereof, a legally organized religious society, and, as such, constitute a corporation, so far as may be necessary to enable them to prosecute and sue for any right which may vest in consequence of any donation, gift, or grant to them. Its members, therefore, may be witnesses in cases like the present, by force of the statute, which is considered as beneficial and remedial, and has already been extended to religious societies of another State suing within this Commonwealth. *First Baptist Church in Bristol* v. *Slade*, 23 Pick. 160.

*Judgment on the verdict*